UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN F. DUNN )
a.k.a. JACK DUNN, )
      Plaintiff )
)
)
    v. )   Civil Action No. 10-11383-FDS
)
)
DAN BROWN and )
SIMON AND SCHUSTER INC., )
      Defendants )

REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
(Document No. 17)
August 16, 2011

NEIMAN, U.S.M.J.

John F. Dunn ("Plaintiff"), proceeding *pro se*, has brought this action against Dan Brown ("Brown") and Simon and Schuster (together "Defendants") alleging, in the main, copyright infringement. Defendants have moved to dismiss or, in the alternative, for summary judgment on that claim along with Plaintiff's accounting and unjust enrichment claims. Defendants' motion has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the following reasons, the court will recommend that Defendants' motion be allowed.

I. STANDARD OF REVIEW

Defendants have filed their motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment. Plaintiff has responded to both motions pursuant to Local Rule 56.1 of the United State District Court for the District of

Massachusetts. As the court has considered matters outside of the pleadings, specifically the two novels at issue, it will address the motion pursuant to Fed. R. Civ. P. 56. *See Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.,* 524 F.3d 315, 321 (1st Cir. 2008) ("Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment.").

When ruling on a motion for summary judgment, a court must construe the facts in the light most favorable to the non-moving party. *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 33 (1st Cir. 2001). Summary judgment will be granted if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Magee v. United States*, 121 F.3d 1, 3 (1st Cir. 1997). Once the moving party has demonstrated that no genuine issue of material fact exists, the burden is on the opposing party to contradict the demonstration by coming "forward with specific, provable facts which establish that there is a triable issue." *Aponte Matos v. Toledo Davila*, 135 F.3d 182, 186 (1st Cir. 1998) (citing *Febus-Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, 91 (1st Cir.1994)).

A genuine issue of material fact is one which a reasonable fact finder could resolve in favor of the nonmoving party. *Id.* Not every genuine factual conflict, however, necessitates a trial. "It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martinez v. Colon*, 54 F.3d 980, 984 (1st Cir. 1995).

II. B<span style="font-variant:small-caps">ackground</span>

Plaintiff is the author of seven books. (Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl. Opp.") at 3.) His book, *The Vatican Boys*, carries an undisputed copyright date of 1997. (Comp. ¶ 5.) Brown, in turn, is the author of five novels, most notably *The DaVinci Code*. His book *Angels & Demons*, which carries a copyright date of 2000, is the best-selling precursor to *The DaVinci Code* and has appeared twice on the New York Times best-seller list. (Defendants' Statement of Undisputed Material Facts ¶¶ 2-3.) Brown denies ever seeing The Vatican Boys before or during the writing of *Angels & Demons*.

Plaintiff's *The Vatican Boys* is a thriller centered around a multi-million dollar banking fraud commenced, in part, by the Catholic organization Opus Dei. The protagonist, Catherine Turrell, is a recovering drug addict in a rehabilitation clinic in Vermont who had previously double-crossed Opus Dei and is looking for the laundered funds she had stolen from her ex-lover, the corrupt Cardinal Hernandez. Also in the story is a search for a sacred cloth which, when joined with another sacred cloth, will bring about the Second Coming and peace on earth. The primary male character, Stephen Hathaway, is the surprise villain, initially Catherine's love interest but later revealed to be obsessed with finding the money and willing to do anything to obtain it.

Brown's novel, *Angels & Demons*, is a fast-paced thriller taking place over the course of one day, primarily in Rome. The plot of the book follows the adventures of the main character, Harvard symbologist Robert Langdon, who must decipher a series of clues hidden by an ancient scientific brotherhood to prevent the murder of four Cardinals and the release of antimatter in St. Peter's Square. Langdon is aided by the

3

beautiful Italian physicist Vittoria Vetra, whose father was killed in order to obtain the antimatter. The novel also prominently features the use of ambigrams and surprise twists, most notably the revelation that the Pope's personal secretary, the Camerlengo, is the mastermind behind the murders.

Plaintiff sued Brown (and the publisher Random House) on an almost identical copyright claim in 2007 over alleged similarities between *The Vatican Boys* and Brown's other best-selling book, *The DaVinci Code*. *See Dunn v. Brown*, 517 F. Supp. 2d 541 (D. Mass 2007) (hereinafter *Dunn I*). There, District Judge Michael A. Ponsor granted summary judgment for the defendants, concluding that, while both books were thrillers involving artifacts from the Catholic Church, "the characters, plot devices, settings, pacing, tone, and theme of the two books are entirely different." *Id.* at 546.

## III. DISCUSSION

A. Copyright Infringement (Count I)

To succeed on a copyright infringement claim, a claimant must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). There is a two-step process to show unlawful copying. First, the plaintiff must prove that, "as a factual matter, the defendant copied the plaintiff's copyrighted material." *Id.* at 18. Second, the plaintiff must prove that "the copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works substantially similar." *Segrets, Inc. v. Gillman Knitwear Co.*, 207 F.3d 56, 60 (1st Cir.2000).

Since no party disputes Plaintiff's ownership of a valid copyright for *The Vatican*

4

*Boys*, the question before the court is whether there exists unauthorized copying of constituent elements of his original work. Thus, the parties acknowledge that this case turns on a single issue: the presence or absence of substantial similarity of protected expression between the two books.

A comparison of two works for copyright violations "must be informed by a key theoretical foundation of copyright law: that '[i]deas cannot be copyrighted.'" *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 33 (1st Cir. 2001) (citations omitted). While an author cannot own an idea, he can claim to own "an original manner of expressing [the] idea[]." *Id.* Further, stereotypical or generally common attributes of characters are not protected by copyright law. *See Quaglia v. Bravo Networks*, No.04-10460-RWZ, 2006 WL 721545, at *3 (D. Mass.) (holding generalized character types are not copyrightable).

In addition, the doctrine of scènes à faire "denies copyright protection to elements of a work that are for all practical purposes indispensable, or at least customary, in the treatment of a given subject matter." *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 68 (1st Cir. 2009). For works of fiction, "courts have recognized that a copyright will not protect plots, subplots or themes" or stereotyped characters. *Franklin v. Ciroli*, 865 F. Supp. 947, 950 (D. Mass 1994). Additionally, "copyright law denies protection to fragmentary words and phrases and to forms of expression dictated solely at functional considerations." *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1519 (1st Cir.1996)

Here, considering the evidence offered by Plaintiff, the court has applied the "ordinary observer" test, asking whether an ordinary reasonable person would find

5

substantial similarity between the two works. *O'Neill v. Dell Pub. Co., Inc.*, 630 F.2d 685, 687 (1st Cir. 1980). As the First Circuit has noted, "[a]lthough [a court] may not be [a] qualified literary critic[], [it is] fitted by training and experience to compare literary works and determine whether they evidence substantial similarity." *Id. at 690.*

The court finds no substantial similarity between *Angels & Demons* and *The Vatican Boys*. While both books are thrillers with religious elements, the plots of the two books are quite different. Brown's *Angels & Demons* is a murder whodunit where the reader follows Langdon to various historical sites in Rome. Plaintiff's *The Vatican Boys* is a crime novel where the reader follows Turrell as she searches for stolen money and evades capture. Further, Brown's novel is set primarily in Rome and takes place in one day, while Plaintiff's novel is primarily set in New England and takes place over three decades.

Moreover, the protagonists do not share substantial similarities. Langdon, in *Angels & Demons*, is an erudite and explicitly agnostic Harvard symbologist whose brilliance comes from his knowledge of and ability to interpret codes and symbols. Turrell, in *The Vatican Boys*, is a recovering drug-addict who stole laundered money from her evil Cardinal-exboyfriend but finds a rebirth of faith in orthodox Catholicism. The two characters are both protagonists, of course, but, in the court's view, the ordinary reader would not find them substantially similar.

Nonetheless, in response to Defendants' motion, Plaintiff cites three rationales for his copyright infringement claim. First, Plaintiff asserts that Brown used "character meshing" to create the character of Langdon. (Pl. Opp. at 6-7.) Second, Plaintiff asserts that there is "direct evidence [of] text copying, paraphrasing and significant

6

protected expression." (Pl. Sur-Rep. at 5.) And third, Plaintiff maintains that the two novels share substantially similar "structure, patterns, thematic expression, settings, timing and narrative sequence of main events as well as introduction, development and interplay of key characters and objects." (Comp. ¶ 10.) The court finds Plaintiff's assertions unpersuasive.

I. Character Meshing

Plaintiff alleges that "Brown copied the Langdon character from *The Vatican Boys* by combining or meshing the persona, traits, and characteristics" of Catherine Turrell with "the physical descriptions, function and interactions" of Stephen Hathaway. (Pl. Opp. at 6-7.) As Defendants note, however, it is unclear on what legal principle Plaintiff bases his theory of character meshing. The court itself has found no legal precedent for combining disparate characteristics of different characters to show substantial similarity. Further, it is the "total concept and feel" of the copyrighted work that may be protected, not individual characteristics. *Warner Bros. Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 241 (2d Cir. 1983).

Even if meshing were a cognizable legal theory, Plaintiff proffers as evidence only that Langdon has the physical descriptions of Hathaway because both characters wear jeans and are attractive, with blue eyes and nice smiles. These type of generic physical descriptions, however, do not have copyright protections. *See Hogan v. D.C. Comics,* 48 F. Supp. 2d 298, 312 (S.D.N.Y. 1999) (finding no substantial similarity where both main characters were "white males who appear to be in their early twenties. Both have thin-to-medium builds, pale skin, dark messy hair and a slovenly appearance"). And, even assuming *arguendo* that Hathaway and Turrell were a

7

composite of traits shared by characters in Plaintiff's book, Plaintiff does not have copyright protection over generically dashing male characters or down-on-their luck heroines who overcome adversity.

    II. <u>Direct Copying and Paraphrasing</u>

Unlike his claim in *Dunn I*, Plaintiff alleges that, in *Angels & Demons*, Brown copied and paraphrased certain of Plaintiff's introductory scenes. In particular, Plaintiff points to the fact that both novels introduce main characters during nightmares. What Plaintiff does not address is the clear differences between the two dream sequences. Langdon, in *Angels & Demons,* is seen running up the Great Pyramid of Giza following an imagined wife who disappears and is replaced by an old man. Turrell, on the other hand, is on a bridge being hunted by a mythical gorgon. As Plaintiff well knows, he cannot copyright all nightmares by all main characters in fiction.

Nevertheless, Plaintiff contends that both characters are "formed" or "created" by the dreams. (Pl. Sur-Rep. at 9.) This argument, too, falls flat. Even if the characters were "formed" by the dreams, the dreams are too dissimilar to have "formed" the same character.

Continuing, Plaintiff also cites a scene involving Boston's Logan Airport. Langdon, in *Angels & Demons*, goes to Logan to fly to Geneva to investigate a strange murder possibly committed by a secret society. Hathaway, in *The Vatican Boys*, arrives at Logan to find Turrell. (Pl. Opp. at 9.) This is not mere coincidence, Plaintiff claims; there are "14,858 [airports] in the United States alone" from which Brown could have had Langdon fly, but he chose Logan. What other airport but Logan was Langdon, a Harvard symbologist, to use? This is similar to suggesting that all but one of the myriad

8

cowboy novels had to avoid Deadwood. More to the point, the use of an airport is not a copyrightable element of a novel; the uses themselves (leaving for Geneva to investigate a murder compared to arriving to go to Burlington, Vermont, to find a friend) also show no substantial similarity.

Persevering, Plaintiff locates what he says are identical or nearly identical quotations in different points of the novels. Hathaway and Langdon both say "How did you get my number?" when answering the phone and, at another point, both Langdon and Turrell are described as "trembling." These examples of "direct word for word copying and paraphrasing," however, are obviously *de minimis* and do not hold copyright protection. They are nothing more than random similarities and "many such similarities could be found in very dissimilar works*." Herzog v. Castle Rock Entmt.,* 193 F.3d. 1241, 1257 (11th Cir. 1999); *see also Alexander v. Haley*, 460 F. Supp. 40, 46 (S.D.N.Y. 1978) ("cliched language, metaphors . . . and expressions conveying an idea . . . can only be, or [are] typically, expressed in a limited number of stereotyped fashions.").

### III. Substantial Similarity

Finally, Plaintiff argues that there are general aspects of substantial similarity throughout the novels that show that *Angels of Demons* plagiarized *The Vatican Boys*. For example, Plaintiff contends, somewhat creatively, that "[i]f you remove the essential time frame setting of the 1990's . . . and then the Secretary to the Pope being in charge of a fictitious 1990's Conclave; there is little left of any story 'time frame or setting' in [*Angels & Demons*]." (Pl. Sur-Rep. at 15.) However, as Plaintiff should know by now, "stock scenes or elements that necessarily flow from a common idea" cannot be the

9

basis for a copyright claim. *CMM Cable*, 97 F.3d at 1522 n.25.

Still other evidence offered by Plaintiff is nothing more than a recitation of either generically abstract or tediously minute similarities, some bordering on the ludicrous. For example, Plaintiff points out that both Langdon and *The Vatican Boys* character Jaime Cole wear seatbelts (Pl. Opp. at 8), both novels take place at some point in April in New England (*Id.* at 13), and each novel has a minor character whose professional title is "Director" (*Id.* at 7, 8, 13). Again, these type of common occurrences are clearly *de minimis* and not substantially similar; courts have found such commonalities to be "inherently subjective and unreliable." *Herzog,* 193 F.3d. at 1257 (finding "random similarities" to be insufficient evidence of copyright infringement).

Judge Ponsor previously considered these types of "generic similarities" assertions in *Dunn I* and said the following:

> Even if a theory of copyright infringement could be based on a similarity of general thematic or structural elements, which is doubtful, no such similarity exists here. One could as easily claim (if the authors had lived contemporaneously) that Hemingway's *Old Man and the Sea* violated the copyright of Melville's *Moby Dick* (aging seaman encounters large fish), Hardy's *Tess of the d'Urbervilles* violated the copyright of Tolstoy's *Anna Karenina* (woman succumbs to passion, suffers consequences), or Joyce's *Portrait of the Artist as a Young Man* violated the copyright of Dickens' *David Copperfield* (troubled childhood leads to writing career).

*Dunn I*, 517 F.Supp.2d at 546. That analysis is no less valid here.

B. <u>Accounting and Unjust Enrichment (Counts II & III)</u>

Plaintiff's two other claims against Defendants, for accounting and unjust enrichment, obviously rise or fall on the success of the copyright infringement claim. Because theses state law claims are based on the same allegations as the copyright claim, they appear to be preempted by the federal claim. *See Feldman v. Twentieth*

10

*Century Fox Film Corp.*, 723 F. Supp. 2d 357, 368 (D. Mass 2010) (holding misappropriation, unfair competition, and unjust enrichment claims are preempted when based on the same allegations as the infringement claim). In any event, since the court believes that the copyright claim has no viability, it will recommend that Counts II and III should also fall by the wayside.

IV. CONCLUSION

In the court's view, this case is an unfortunate example of that "obsessive conviction, so frequent among authors and composers, that all similarities between their works and any others which appear later must inevitably be ascribed to plagiarism." *Dellar v. Samuel Goldwyn, Inc.*, 150 F.2d 612, 613 (2d Cir. 1945). In this second attempt at bringing suit against Brown for copyright infringement, it appears that Plaintiff has convinced himself that every minute similarity in *Angels & Demons*, from Robert Langdon being male to his residence in New England, is proof of copyright infringement. The court obviously does not agree and recommends that Defendants' motion for summary judgment be ALLOWED.[1]

---

[1] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

DATED: August 16, 2011

/s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge